Clayeo C. Arnold, SBN 65070
JOSHUA H. WATSON, SBN 238058
CLAYEO C. ARNOLD, APC
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jwatson@justice4you.com

Darren Guez, SBN 282023
THE DARREN GUEZ LAW FIRM
836 57th Street
Sacramento, CA 95819
Telephone: (916) 520-0988
Email: darren@guezlaw.com

Attorneys for Plaintiff
*Deborah Hite*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HITE,<br><br>                Plaintiffs,<br><br>            vs.<br><br>EQUITY LIFESTYLE PROPERTIES, INC., MHC OPERATING LIMITED PARTNERSHIP, MHC THOUSAND TRAILS LIMITED PARTNERSHIP, MHC NAC LLC, and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES AND INJUNCTION<br><br>   1.   VIOLATION OF AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12182(a))<br>   2.   DISCRIMINATION IN VIOLATION OF UNRUH ACT (CAL. CIVIL CODE §§ 51, 51.5)<br><br>***Jury Trial Demanded***<br><br>***Exemplary Damages Demanded*** |

1

COMPLAINT FOR DAMAGES AND INJUNCTION

Comes now Plaintiff DEBORAH HITE, who alleges and complains as follows on information and belief, and who prays for relief from the court:

### **PARTIES**

1. Plaintiff DEBORAH HITE is a competent adult residing in the State of California. DEBORAH HITE lives with conditions constituting physical disability under the law, including in that she has diminished heart function that affects her endurance (including with respect to walking, standing, bathing, dressing, and engaging in activities of daily living), and the persistent effects of a leg injury that requires regular use of a brace which further affects her walking, standing, bathing, dressing, and engaging in activities of dialing living.  DEBORAH HITE is a California resident.

2. Defendant EQUITY LIFESTYLE PROPERTIES, INC. (hereafter "EQUITY") is a corporation organized under the laws of Maryland, with a principle place of business at Two N .Riverside Plaza, Suite 800, Chicago IL 60606.

3. Defendant MHC OPERATING LIMITED PARTNERSHIP (hereafter "OPERATING SUBSIDIARY"),is a business entity owned and controlled by EQUITY, and operates from the same address: Two N .Riverside Plaza, Suite 800, Chicago IL 60606.

4. Defendant MHC THOUSAND TRAILS LIMITED PARTNERSHIP (hereafter "CONTRACTING SUBSIDIARY") is a business entity owned and controlled by EQUITY, and operates from the same address: Two N .Riverside Plaza, Suite 800, Chicago IL 60606.

5. Defendant MHC NAC LLC (hereafter "PROPERTY OWNER SUBSIDIARY"), is a business entity owned and controlled by EQUITY, and operates from the same address: Two N .Riverside Plaza, Suite 800, Chicago IL 60606.  MHC NAC LLC is a limited liability company formed under the laws of Delaware.

6. The names and capacity of defendants, and each of them, sued as DOES 1 through 10, inclusive, (hereafter "DOES" and included in references to "Defendants") are unknown to plaintiff at this time who, therefore, sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants

COMPLAINT FOR DAMAGES AND INJUNCTION

designated as a DOE is legally responsible for the events and happenings referred to in this Complaint, and directly caused injury and damages to Plaintiff.  Plaintiff will amend this Complaint to reflect the true identities of DOE defendants upon their discovery.

7. Defendants, DOES, and each of them, were at all times mentioned, the agents, representatives, employees, partners, of each of the other defendants and were at all times mentioned acting within the course and scope of said agency, representation, employment, partnership, joint venture or relationship stated therein, and were acting with the consent and knowledge of each of the other defendants.

8. Defendants, DOES, and each of them were aware of the actions and omissions of one another as related to this Complaint, and each pre-authorized, approved, and ratified the conduct of each of the others.

9. EQUITY, OPERATING SUBSIDIARY, CONTRACTING SUBSIDIARY, PROPERTY OWNER SUBSIDIARY, DOES 1 to 10, and each of them jointly and individually now and at all relevant times owned, managed, operated, controlled, and contracted with customers regarding recreational vehicle parks throughout the State of California, and did so under the trade name "Thousand Trails," which is and at all relevant times was marketed and managed online at the web address of www.thousandtrails.com. Defendants, DOES, and each of them were engaged in a joint venture in this regard.

## JURISDICTION AND VENUE

10. Federal Question jurisdiction exists because this Complaint seeks injunctive relief under the Americans with Disabilities Act: 42 U.S.C. § 12182(a).

11. Diversity jurisdiction also exists since Plaintiffs reside in California, and all defendants operate from Illinois.  (Plaintiff does note that PROPERTY OWNER SUBSIDIARY has substantial operations in California, though it purports to operate from Illinois.)

## GENERAL FACTUAL ALLEGATIONS

**A. Nature of the Parties and Their Relationships to One Another.**

12. EQUITY is a publically traded enterprise that is listed on the New York Stock Exchange as ELS.

COMPLAINT FOR DAMAGES AND INJUNCTION

13. EQUITY holds itself out to investors as "a fully integrated owner and operator of lifestyle-oriented properties ("Properties") consisting primarily of manufactured home ("MH") and recreational vehicle ("RV") communities."  (*See,* ELS 2018 Annual Report and 10-K SEC filing, page 1 at https://equitylifestyle.gcs-web.com/static-files/fd324924-c6ab-4f4c-ad70-476e4901a09f.)  This representation is true.

14. EQUITY makes the following representations to investors and the SEC: "We are one of the nation's largest real estate networks with a portfolio, as of December 31, 2018, of 414 Properties (including joint venture Properties) consisting of 155,447 Sites located throughout the United States and Canada. These Properties are located in 33 states and British Columbia." (*See,* ELS 2018 Annual Report and 10-K SEC filing, page 1 at https://equitylifestyle.gcs-web.com/static-files/fd324924-c6ab-4f4c-ad70-476e4901a09f.) This representation is true.

15. EQUITY publishes the map below in its 2018 Annual Report, which shows properties owned by EQUITY's enterprise in the continental United States:



16. EQUITY controls OPERATING SUBSIDIARY.

17. EQUITY is the majority owner of OPERATING SUBSIDIARY.

18. OPERATING SUBSIDIARY controls further subsidiaries which own and operate EQUITY's network of properties, including those depicted in the map in paragraph 15.

COMPLAINT FOR DAMAGES AND INJUNCTION

19. EQUITY operates a group of more than 80 RV resorts under the brand name "Thousand Trails." These resorts are a subset of the properties depicted in paragraph 15.

20. Within California, Thousand Trails branded properties include the following:

|  | Resort Name | City | County | # of Spaces* |
|---|---|---|---|---|
| 1. | Idyllwild RV Resort | Idyllwild, CA | Riverside | 252 |
| 2. | Lake Minden RV Resort | Nicolaus, CA | Sutter | 212 |
| 3. | Lake of the Springs RV Resort | Oregon House, CA | Yuba | 556 |
| 4. | Morgan Hill RV Resort | Morgan Hill, CA | Santa Clara | 320 |
| 5. | Oakzanita Springs RV Campground | Descanso, CA | San Diego | 118 |
| 6. | Palm Springs RV Resort | Palm Desert, CA | Riverside | 401 |
| 7. | Pio Pico RV Resort & Campground | Jamul, CA | San Diego | 532 |
| 8. | Ponderosa RV Resort | Lotus, CA | El Dorado | 146 |
| 9. | Rancho Oso RV & Camping Resort | Santa Barbara, CA | Santa Barbara | 159 |
| 10. | Russian River RV Campground | Cloverdale, CA | Sonoma | 125 |
| 11. | San Benito RV & Camping Resort | Paicines, CA | San Benito | 596 |
| 12. | Snowflower RV Resort | Emigrant Gap | Pacer | 208 |
| 13. | Soledad Canyon RV & Camping Resort | Acton, CA | Los Angeles | 854 |
| 14. | Turtle Beach RV Resort | Manteca, CA | San Joaquin | 72 |
| 15. | Wilderness Lakes RV Resort | Menifee, CA | Riverside | 523 |
| 16. | Yosemite Lakes RV Resort | Groveland, CA | Tuolumne | 490 |
| | | | **TOTAL SPACES IN CALIFORNIA:** | **5,564** |

\* Number of spaces as disclosed at ThousandTrails.com

21. PROPERTY OWNER SUBSIDIARY owns some, but not all, of the properties in EQUITY's network of properties.

22. PROPERTY OWNER SUBSIDIARY owns the land for the "Wilderness Lakes RV Resort," which is located at 30605 Briggs Rd, Menifee, CA 92584.

23. PROPERTY OWNER SUBSIDIARY is controlled by OPERATING SUBSIDIARY.

24. EQUITY controls PROPERTY OWNER SUBSIDIARY'S actions.

COMPLAINT FOR DAMAGES AND INJUNCTION

25. CONTRACTING SUBSIDIARY sells memberships for Thousand Trails properties. Customers with memberships may use Thousand Trails branded properties for reduced fees.

26. Thousand Trails operates as a for-profit business within EQUITY's enterprise.

27. Persons with Thousand Trails memberships do not exercise control over operations of Thousand Trails.  Instead EQUITY and its subsidiaries exercise control over operations at Thousand Trails branded properties.

28. Any person who pays the necessary funds may purchase a membership to Thousand Trails.

29. RV parks operated under the Thousand Trails brand are open to those members of the public who do not have a Thousand Trails membership.  Non-members must simply pay more for services.

30. Thousand Trial parks generally provide customers with access to the following facilities:

   a. Spaces where recreational vehicles ("RVs") can be parked, with some spaces providing utility hookups, and some spaces offered without such hookups.

   b. Spaces where customers may camp and park a passenger vehicle.

   c. Cabins with varying  utilities and accommodations.

   d. Parking.

   e. Recreational facilities such as pools, a community hall, walking routes, park/picnic spaces, and scenic features (e.g. gazebo overlooking scenic area).

   f. Restrooms, including multiple restroom buildings for RV and tent customers.

   g. Bathing facilities, including multiple restroom buildings for RV and tent customers.

   h. Restaurant/general store.

   i. Mixed-use pedestrian and vehicle pathways for accessing different areas of the preserve.

31. The facilities above are connected by mixed-use pedestrian and vehicle pathways at most of Thousand Trails parks.

6

COMPLAINT FOR DAMAGES AND INJUNCTION

32. RV parks operated under the Thousand Trails brand name by EQUITY and its subsidiaries are places of public accommodation within the meaning of Title III of the Americans with Disabilities Act.

33. RV parks operated under the Thousand Trails brand name by EQUITY and its subsidiaries are places of public accommodation within the meaning of the California Unruh Act, Civil Code § 51 et seq.

34. Under the rules applicable to Thousand Trails memberships, Members, including Plaintiff, may stay at a single RV park for up to three weeks, and then must stay at another location, including another RV park within the Thousand Trails network for one week before returning to the initial location. In this Complaint, this rule is referred to as the "three-in-one-out" rule.

35. Customers with Thousand Trial memberships, including Plaintiff, are not tenants with respect to their use of Thousand Trail branded RV parks.

36. No Defendant is a landlord with respect to Plaintiff.

37. Defendants are aware that some Members use Defendants' RV parks as their primary source of shelter, and that such members move between preserves as required by the "three-in-one-out" rule (or a similar rule governing maximum visit times as may be applicable to various contracts).

  a. In this Complaint, such Members are referred to as "Member-Residents."

38. The group of Member-Residents includes persons with physical disabilities.

39. Since about 2016, Plaintiff and her husband have held a membership allowing them to use all Thousand Trails branded RV parks nationwide. This includes but is not limited to a right to use all properties listed in paragraph 15.

40. In the period from 10/14/2017 to 10/14/2019, Plaintiff and her husband have been Member-Residents. They will continue to be Member-Residents for the duration of their lives. They have the right under the terms of their Thousand Trails contract to pass their membership on to their next of kin or other designee through sale or inheritance.

41. Within the past two years, Plaintiff has resided at Wilderness Lakes RV Resort in

COMPLAINT FOR DAMAGES AND INJUNCTION

Menifee, California (a Thousand Trails branded RV park) for three out of every four weeks.

42. Within the past two years, Plaintiff has generally resided at a park not within the Thousand Trails network for one out of every four weeks.

43. This pattern of Plaintiff spending three weeks at Wilderness Lakes RV Resort and one week at another RV park is expected to generally continue into the future indefinitely, although Plaintiff has an interest in visiting other Thousand Trails RV parks in California and out of state.  Specifically, Plaintiff would like to use her membership to facilitate travel to see family or sites within the State and around the nation.

44. Since at least 2016 Plaintiff has been a person with a physical disability, as alleged above.  Nonetheless, Plaintiff values her independence in activities of daily living, and exercises such independence to the degree she is able.

**B. Description of the Wilderness Lakes RV Resort**

45. Wilderness Lakes RV Resort is a multiple-building site.  It includes clusters of RV and camping spaces.  Bathing facilities and toilet facilities are distributed throughout the preserve in separate buildings.

46. Exhibit 1 to this Complaint is a true and correct copy of a map of the Wilderness Lakes RV Resort which Defendants make available online at https://rvonthego.com/media/com_rv/uploads/resorts/sm0216-wildernesslakes_1454706574.pdf via a link from https://www.thousandtrails.com/california/wilderness-lakes-rv-resort/.

47. Exhibit 1 correctly depicts the layout of each of the following elements at the Wilderness Lakes RV Resort:

    a.  Buildings

    b.  Restrooms

    c.  Bathing facilities

    d.  RV parking/camping spaces

COMPLAINT FOR DAMAGES AND INJUNCTION

    e.   Camping spaces

    f.   Roads

    g.   Designated walking trails

    h.   Pools

    i.   Entry and exit points for the site

48. There over 500 spaces for customer use (for camping or RV parking) at the Wilderness Lakes RV Resort.

49. Restrooms at the Wilderness Lakes RV Resort include restrooms housed in the following buildings (identified as designated in Exhibit 1), none of which are connected to any of the others by any hallway or sidewalk (unless noted):

    a.   RR1 abutting Washington

    b.   RR2 abutting Montana

    c.   RR3 abutting Florida

    d.   RR4 abutting Robin

    e.   RR5 abutting Pigeon

    f.   RR6 abutting Cardinal

    g.   RR7 abutting Blackbird

    h.   Next to the Adult Pool and Spa abutting Washington

    i.   Next to the Family Pool abutting Mallard, North of the pool (connected to South-side family pool restroom by the pool area, but with both in separate buildings)

    j.   Next to the Family Pool abutting Mallard, South of the pool (connected to North-side family pool restroom by the pool area, but with both in separate buildings)

    k.   In the Adult Lodge abutting Briggs Rd.

50. Each of the restrooms above is a separate "toilet facility" within the meaning of standard 4.1.2(6) of the 1991 U.S. Department of Justice regulations implementing the Americans with Disabilities Act located at 28 C.F.R. Pt. 36, App. D.

    a.   Hereafter, "1991 ADA Standards" refers to the standards located at 28 C.F.R. Pt. 36, App. D. promulgated in 1991.  These are available online from the U.S.

9

COMPLAINT FOR DAMAGES AND INJUNCTION

Department of Justice at: https://www.ada.gov/1991ADAstandards_index.htm.

51. Each of the restrooms above is a separate "toilet room" within the meaning of standard 213.2 of the 2010 U.S. Department of Justice regulations implementing the Americans with Disabilities Act located at 28 CFR part 36, Subpart D and 36 CFR part 1191, Appendices B and D.

    a.  Hereafter, "2010 ADA Standards" refers to the combined standards located at 28 CFR part 36, Subpart D and 36 CFR part 1191, Appendices B and D, in which any conflict between the stated regulations is resolved in favor of 28 CFR part 36, subpart D.  These are available online from the U.S. Department of Justice at: https://www.ada.gov/2010ADAstandards_index.htm.

52. Bathing facilities at the Wilderness Lakes RV Resort include bathing facilities housed in the following buildings (identified as designated in Exhibit 1), none of which are connected to any of the others by any hallway or sidewalk:

    a.  RR1 abutting Washington

    b.  RR2 abutting Montana

    c.  RR3 abutting Florida

    d.  RR4 abutting Robin

    e.  RR5 abutting Pigeon

    f.  RR6 abutting Cardinal

    g.  RR7 abutting Blackbird

    h.  Next to the Adult Pool and Spa abutting Washington

    i.  Next to the Family Pool abutting Mallard, South of the pool

53. Each of the bathing facilities above is a separate "bathing facility" within the meaning of standard 4.1.2(6) of the 1991 ADA Standards.

54. Each of the bathing facilities above is a separate "bathing room" within the meaning of standard 213.2 of the 2010 ADA Standards.

55. Each of the following locations at Wilderness Lakes is a feature of the property which falls within the ADA standard requiring that at least one accessible route shall connect all

COMPLAINT FOR DAMAGES AND INJUNCTION

accessible buildings, facilities, elements, and spaces on the same site (*See,* 1991 ADA

Standard 4.1.2(2); 2010 Standard 206.2.4):

    a.   Family Pool

    b.   Adult Pool

    c.   Spa at Family Pool

    d.   Spa at Adult Pool

    e.   Ball Field

    f.   Tennis/Pickelball Court

    g.   Short Term Storage

    h.   Adult Lodge

    i.   Resort Operations

    j.   Horseshoes Play Area

    k.   Mini-Golf Play Area

    l.   Volleyball Play Area

    m.   Shuffleboard Play Area

    n.   Dog Run

    o.   Fitness Center

    p.   Basketball Area

    q.   Nature Center/Fire Ring

    r.   Playground

    s.   Footbridges

    t.   Walking paths

    u.   RR1

    v.   RR2

    w.   RR3

    x.   RR4

    y.   RR5

    z.   RR6

COMPLAINT FOR DAMAGES AND INJUNCTION

aa. RR7

bb. Designated-as-accessible RV spaces

**C. Difficulty Using Facilities Faced by Plaintiff and Those Similarly Situated**

56. Because of Plaintiff's disabilities, she would be more able to use the facilities of Thousand Trails branded properties, including but not limited to Wilderness Lakes RV Resort, if those facilities were compliant with all ADA standards pertaining to ambulation, seating or rest elements, ingress, approaches, grab bars, and accessible routes.  Because of her disabilities, to the degree Thousand Trails branded properties, including but not limited to Wilderness Lakes RV Resort, deviate from the ADA standards in these areas, Plaintiff has increased difficulty, discomfort, and embarrassment utilizing Thousand Trails branded properties.  Her difficulties caused by non-compliance with ADA standards include but are not limited to problems using bathing facilities, restrooms, and ambulating between accessible features.

57. Plaintiff is similarly situated to many other Member-Residents in California.  Defendants operate at least 16 RV resort properties in California branded as Thousand Trails Property.  Those resorts include spaces for over 5,500 customers at a time.

58. Many of those customers are Member-Residents with disabilities.  There are more Member-Residents than there are designated-accessible RV spaces to service them, such that Member-Residents, including Plaintiff, often must use spaces not designated as accessible and which are serviced by bathing and restroom facilities other than those immediately adjacent to the designated-accessible RV spaces.  As a result, making only the bathing and restroom facilities next to designated-accessible RV spaces does not eliminate the difficulty, discomfort, or embarrassment occasioned on Plaintiff and those similarly situated due to non-compliant restrooms, bathing facilities, accessible routes, and other issues throughout the subject RV parks.

59. Because of Plaintiff's disabilities, she is more able to use showering facilities when they comply with 1991 ADA Standard 4.21 (Shower Stalls) and/or 2010 ADA Standard 608 (Shower Compartments).  Specific examples include:

COMPLAINT FOR DAMAGES AND INJUNCTION

a. Plaintiff benefits from a seat being provided.  She benefits from being able to sit and rest as she bathes.

b. Plaintiff benefits from grab bars being placed on two walls, including opposite the chair and on the wall without a seat or controls.  Grab bars help her balance herself, avoid falls, support herself for portions of bathing when she stands, and get up and down from the seat.

c. Plaintiff benefits from the floor being stable, firm, and anti-slip.  This helps her prevent falls and supports her balance and ability to maneuver.

d. Plaintiff benefits from the shower head and/or controls being opposite the seat, and at the correct height.  This helps her reach the controls and shower head, and helps with her coordination/balance needs in using the showerhead.

e. Plaintiff benefits from any hooks for holding towels, clothes, or other items being placed at the correct height.  This helps her reach those items without being thrown off balance and helps her actually be able to use those features of the shower.

f. Plaintiff benefits from an appropriate space to sit to dry and dress/undress.  This helps her avoid falls, and assists with respect to her endurance.

60. Because of Plaintiff's disabilities, shewould be more able to use facilities if they complied with 1991 ADA Standard 4.5 (Ground and Floor Surfaces) and/or 2010 ADA Standard 302 (Floor or Ground Surfaces).  Specific examples include:

a. Plaintiff benefits from ground and floor surfaces being stable, firm, and slip resistant.  This helps her ambulate and balance, including when she is exhausted.  At times, Plaintiff makes use of assistive devices to ambulate, and compliant surfaces help prevent her devices from getting stuck or otherwise hindered.

b. Plaintiff benefits from ground and floor surfaces being level or of modest slope, free of horizontal obstructions or vertical transitions.  This helps Plaintiff ambulate when exhausted and helps with the movement of her leg in a brace.

COMPLAINT FOR DAMAGES AND INJUNCTION

61. Plaintiff benefits from being allowed to have an attendant when she uses the shower or restroom.  *See*, 28 CFR 26.302(a) ["A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities"].

62. Because of Plaintiff's disabilities, she is more able to use toilet/restroom facilities when they comply with 1991 ADA Standard 4.16 (Water Closets); 4.17 (Toilet Stalls) and/or 2010 ADA Standard 213 (Toilet Facilities and Bathing Facilities); 216.8 (Signage at Noncompliant Restrooms and Bathing Rooms); 603 (Toilet and Bathing Rooms). Specific examples include:

   a. Plaintiff benefits from grab bars being placed on two walls, including opposite the chair and on the wall without a chair or controls.  Grab bars help her get up and down from the seat.

   b. Plaintiff benefits from the floor being stable, firm, and anti-slip.  This helps her prevent falls and supports her balance and ability to maneuver.

   c. Plaintiff benefits from any hooks for holding clothes or other items being placed at the correct height.  This helps her reach those items without being thrown off balance.

   d. Plaintiff benefits from appropriately dimensioned space for stalls.  This helps her maneuver, especially on those occasions when she utilizes a walker or other assistive device.

63. Because of Plaintiff's disabilities, she is more able to access facilities when they are connected via an accessible route and include accessible approaches and entries in compliance with 1991 ADA Standard 4.3 (Accessible Route); 4.14 (Entrances) and/or 2010 ADA Standard 206 (Accessible Routes); 404 (Doors).  Specific examples include:

   a. Plaintiff benefits from firm, stable, and slip resistant floor and ground surfaces

   b. Plaintiff benefits from accessible paths linking accessible features, including but not limited to RV spaces, restrooms/bathing facilities, lounge, pool, and

COMPLAINT FOR DAMAGES AND INJUNCTION

recreational areas.

    c.  Plaintiff benefits from modest slopes and avoidance of unnecessary stairs and gaps in paving/surfacing.

    d.  Plaintiff benefits from doors that open and close in the directions and within the force tolerances of the ADA regulations.

**D. Plaintiff's Issues at Wilderness Lakes**

64. Over the past two years, Plaintiff has used RR5, RR6, and RR7 at Wilderness Lakes RV Resort to bathe on those occasions when she stayed at Wilderness Lakes RV Resort.  She will continue to do so indefinitely in keeping with the space she is assigned by management at Wilderness Lakes RV Resort when she checks in for a stay.

65. The figure below depicts the purportedly accessible women's shower in <u>RR5</u>, and depicts how it has appeared in all material respects for the past two years, except that within about the last two months, the white chair in the foreground has been removed:



COMPLAINT FOR DAMAGES AND INJUNCTION

66. The purportedly accessible women's shower in RR5 is not in compliance with the 1991 or 2010 ADA standards, including with respect to the following:

    a.  A horizontal grab bar should be placed on the rear wall pursuant to:

        i.  1991 ADA Standard 4.21.4, and Fig. 37 to the standard;

        ii.  2010 ADA Standard 608.3.1 and Figure 608.3.1 to the standard.

        iii.  [*See, e.g,* $17.99 AmazonBasics 18" Grab Bar,

                https://www.amazon.com/AmazonBasics-Bathroom-Handicap-Safety-Diameter/dp/B079L6LY1V/ref=sr_1_4.]

    b.  The shower spray unit should be placed between 38-48 inches from the floor, but is placed much higher, in violation of:

        i.  1991 ADA Standard 4.21.5; 4.21.6;

        ii.  2010 ADA Standard 608.5.1; 608.6.

    c.  The drain cover in the floor is often loose and wobbles in showers used by Plaintiff at Wilderness Lakes RV Resort.  This violates:

        i.  1991 ADA Standard 4.5.1;

        ii.  2010 ADA Standard 302.1.

    d.  The foreground of the photo in paragraph 59 depicts a dressing room immediately in front of the shower.  The white chair was removed in about August of 2019, making it more difficult for Plaintiff to dress and undress.  Plaintiff notes that this is an area with limited space, yet a folding-up bench attached to the wall could be placed so as to be as compliant with ADA regulations as is readily achievable, given EQUITY's status as a publically traded company generating hundreds of millions of dollars in annual profits.  (*See, e.g.,* $109.99 wall mounted folding bench at

        https://www.amazon.com/dp/B07F8KFNG7/ref=sspa_dk_detail_0?psc=1&pd_rd_i=B07F8KFNG7.)  Failure to provide seating in the dressing room violates:

        i.  1991 ADA Standard 4.35.4;

        ii.  2010 ADA Standard 803.4.

COMPLAINT FOR DAMAGES AND INJUNCTION

e.   Further, towel hooks out of the frame of the photograph but located in the

dressing room area are too high, and should only be 48" from the ground, per:

i.   1991 ADA Standard 4.2.5;

ii.   2010 ADA Standard 308.2.1.

67. The ADA violations in shower/restroom areas discussed in this Complaint are illustrative

of problems faced by Plaintiff in utilizing the stated property feature, and increase

Plaintiff's difficulty and discomfort of using the features.  Plaintiff requires additional

assistance of her husband as a caregiver as a result of the non-compliance which reduces

her individual independence in a largely gender-segregated area, thereby increasing her

embarrassment.  If these violations were removed/remediated, Plaintiff would face less

difficulty, discomfort, and embarrassment in using the facilities above.

68. Defendants could easily remediate the ADA violations depicted in the above shower by

taking the steps illustrated below.  Plaintiff highlights that the readily achievable standard

does not require that a business be in perfect compliance with all ADA construction

standards in pre 1992 buildings, but does require businesses take readily achievable

efforts on an ongoing basis, and that Defendants have had over 20 years to make this

feature complaint.  Readily achievable improvements relevant to Plaintiff include:



1. Lower shower head

2. Add grab bar

3. Secure drain

4. Add foldup bench

5. Lower towel hooks

COMPLAINT FOR DAMAGES AND INJUNCTION

69. The figure below depicts the purportedly accessible women's shower in <u>RR6</u>, and depicts

how it has appeared in all material respects for the past two years:



70. The purportedly accessible women's shower in RR6 is not in compliance with the 1991

or 2010 ADA standards.  Plaintiff notes that, while this shower was constructed prior to

the ADA being enacted, Plaintiff Defendants have had an ongoing duty to make the

shower as complaint as is readily achievable for over 20 years.  This shower's non-

compliance includes (assuming that it is not readily achievable to move plumbing

controls or relocate the shower):

    a.   A grab bar should be placed on the right wall/partition so that there is a bar

       opposite the seat

          i.   1991 ADA Standard 4.21.4, and Fig. 37 to the standard;

        ii.   2010 ADA Standard 608.3.1 and Figure 608.3.1 to the standard.

      iii.   [*See, e.g,* $17.99 AmazonBasics 18'' Grab Bar,

COMPLAINT FOR DAMAGES AND INJUNCTION

https://www.amazon.com/AmazonBasics-Bathroom-Handicap-Safety-Diameter/dp/B079L6LY1V/ref=sr_1_4.]

   b.  The shower spray unit should be placed between 38-48 inches from the floor and opposite the seat, but is placed much higher and is on the wrong wall, in violation of:

        i.  1991 ADA Standard 4.21.5; 4.21.6;

        ii.  2010 ADA Standard 608.5.1; 608.6.

   c.  Because there is no drain in the shower unit and no anti-slip surface on the floor, the floor becomes very slick with when the shower used.  This violates the rule requiring floor and ground surfaces to be stable, firm, and slip resistant, codified at:

        i.  1991 ADA Standard 4.5.1;

        ii.  2010 ADA Standard 302.1.

        iii.  [*See, e.g.,* $9.88 Secopad Non-Slip Bathtub Stickers, https://www.amazon.com/Secopad-Non-Slip-Stickers-Bathroom-Adhesive/dp/B07H9C8S81/ref=sr_1_2_sspa.]

   d.  Towel hooks out of the frame of the photograph but located in the dressing room area are too high, and should only be 48" from the ground, per:

        i.  1991 ADA Standard 4.2.5;

        ii.  2010 ADA Standard 308.2.1.

//

//

//

//

19

COMPLAINT FOR DAMAGES AND INJUNCTION

71. Defendants could easily remediate the ADA violations depicted in the above shower by taking the steps illustrated below.  Plaintiff highlights that the readily achievable standard does not require that a business be in perfect compliance with all ADA construction standards in pre 1992 buildings, but does require businesses take readily achievable efforts on an ongoing basis, and that Defendants have had over 20 years to make this feature complaint.  Readily achievable improvements relevant to Plaintiff include:



1. Move shower head to opposite of seat, and lower.  Optional: Add second shower head or sliding head.
2. Add grab bar
3. Add non-slip stickers/mat
4. Lower towel hooks in dressing area.

//

//

//

//

COMPLAINT FOR DAMAGES AND INJUNCTION

72. The figure below depicts the purportedly accessible women's shower in <u>RR7</u>, and depicts how it has appeared in all material respects for the past two years:



73. The purportedly accessible women's shower in RR7 is not in compliance with the 1991 or 2010 ADA standards, including with respect to the following:

    a.  A horizontal grab bar should be placed on the wall opposite the seat pursuant to:

        i.  1991 ADA Standard 4.21.4, and Fig. 37 to the standard;

        ii.  2010 ADA Standard 608.3.1 and Figure 608.3.1 to the standard.

        iii.  [*See, e.g,* $17.99 AmazonBasics 18" Grab Bar,

           https://www.amazon.com/AmazonBasics-Bathroom-Handicap-Safety-Diameter/dp/B079L6LY1V/ref=sr_1_4.]

    b.  Presuming that remodeling to a state of complete compliance is not readily achievable due to plumbing costs, the shower spray unit should be placed between 38-48 inches from the floor opposite the seat, but is placed much higher and on

COMPLAINT FOR DAMAGES AND INJUNCTION

the wrong wall, in violation of:

    i.  1991 ADA Standard 4.21.5; 4.21.6;

    ii.  2010 ADA Standard 608.5.1; 608.6.

c.  Because there is no drain in the shower unit and no anti-slip surface on the floor, the floor becomes very slick with when the shower used.  This violates the rule requiring floor and ground surfaces to be stable, firm, and slip resistant, codified at:

    i.  1991 ADA Standard 4.5.1;

    ii.  2010 ADA Standard 302.1.

    iii.  [*See, e.g.,* $9.88 Secopad Non-Slip Bathtub Stickers, https://www.amazon.com/Secopad-Non-Slip-Stickers-Bathroom-Adhesive/dp/B07H9C8S81/ref=sr_1_2_sspa.]

d.  Towel hooks out of the frame of the photograph but located in the dressing room area are too high, and should only be 48" from the ground, per:

    i.  1991 ADA Standard 4.2.5;

    ii.  2010 ADA Standard 308.2.1.

//

//

//

//

//

//

COMPLAINT FOR DAMAGES AND INJUNCTION

74. Defendants could easily remediate the ADA violations depicted in the above shower by taking the steps illustrated below. Plaintiff highlights that the readily achievable standard does not require that a business be in perfect compliance with all ADA construction standards in pre 1992 buildings, but does require businesses take readily achievable efforts on an ongoing basis, and that Defendants have had over 20 years to make this feature complaint. Readily achievable improvements relevant to Plaintiff include:



1. Move shower head to opposite of seat, and lower. Optional: Add second shower head or sliding head.
2. Add grab bar.
3. Add non-slip stickers/mat.

75. In addition to the issues with the showers above, Plaintiff experiences issues with restroom stalls lacking grab bars and being of the wrong dimensions, approaches to buildings having improper surfacing characteristics, a lack of accessible routes, and doors opening in a way that block accessible routes.

76. On account of her status as a Member-Resident and the number and nature of the ADA violations at Wilderness Lakes, Plaintiff actually encountered at least one ADA violations at Wilderness Lakes every day that she was at Wilderness Lakes, and also was at times deterred from using facilities at Wilderness Lakes because she was aware of the violations, and went without the subject facilities instead of struggling to use them.

**E.  Relationship to Other Sites and Litigation**

77. Other properties operated by Defendants under the Thousand Trails brand also have compliance problems.  On information and belief, these problems are common across all Thousand Trails branded properties, including but not limited to those in California and throughout the nation.

78. In 1997, the entities then-operating the Thousand Trails brand of RV parks in California entered into a class action settlement in the matter of Johnnie Lacy v Thousand Trails, Inc.  The settlement agreement was signed on behalf of Thousand Trails by Walter Jaccard, who is currently the Vice President of Legal at Defendant Equity Lifestyle Properties.

79. Equity Lifestyle Properties is the successor in interest or otherwise bound by the Lacy class action settlement.

80. Equity Lifestyle Properties has actual notice of the claims made and the resulting settlement in the Lacy class action matter.

81. In the Lacy class action settlement, the operator of the Thousand Trails branded RV parks agreed to spend $75,000 every 18 months to fund removal of architectural barriers as was readily achievable until 17 specified RV parkswere in ADA compliance with respect to making readily achievable improvements.

82. The Thousand Trails branded RV parks have not been brought into ADA compliance with respect to making readily achievable improvements.

83. Had the operators of the Thousand Trails branded parks engaged in this funding pattern, they would have spent over $1 Million on readily achievable improvements to the 17 RV parks in the Lacy agreement.

84. The operators of Thousand Trails did not comply with the Lacy agreement.  They have not made the parks accessible.

85. Of the Thousand Trails branded RV Parks currently in operation in California, only two (Morgan and Ponderosa) were not included in the remediation plan under Lacy.

//

COMPLAINT FOR DAMAGES AND INJUNCTION

86. On October 15, 2018, EQUITY and certain of its related entities were named as defendants in the federal case of *Coffelt v Equity Lifestyle Properties, Inc.*, et al, U.S. District Court for the Central District of California, Case No. 5:18-cv-02186.  That case is currently pending before Judge Cormac J. Carney.

87. The *Coffelt* matter is closely related to the issues in this Complaint.  Jeannie Coffelt was a Member-Resident of Thousand Trails.  She and her husband and a membership analogous to that of Plaintiff in this matter, and also spent their "three weeks in" at Wilderness Lakes RV Resort in Menifee, California.  Ms. Coffelt alleged that she slipped on a loose shower drain cover and suffered a broken toe.  Ms. Coffelt ambulated part of the time with a wheelchair.  She alleged violations of ADA standards in a similar pattern to those alleged by Ms. Hite, and also alleged that an ADA violation caused her broken toe, and the gangrene that resulted.  The photos of showers in this Complaint are from the investigation materials of Ms. Coffelt's case.

88. In September 2019, Ms. Coffelt died from complications of gangrene of her foot which arose after her fall in the shower at Wilderness Lakes.

89. Ms. Coffelt sought an injunction to require Defendants to bring their properties into compliance with ADA by taking all readily achievable actions to remediate violations.

90. It is expected that Ms. Coffelt's estate or successor in interest will continue her litigation.  However, her estate/successor likely lacks standing to seek injunctive relief.

91. Plaintiff in this matter now seeks the necessary change, which apparently Defendants will not make absent injunction.

92. Whatever what may have transpired in the past, EQUITY had actual notice of the alleged ADA violations in this Complaint for approximately a year since *Coffelt* complaint was filed.  Yet, EQUITY has failed to take even the most basic steps at Wilderness Lakes alleged herein, including adding grab bars, adding anti-slip stickers to showers without drainage, and locating shower spray units where customers with disabilities can actually reach them.

93. EQUITY's failure to comply with ADA is willful.

COMPLAINT FOR DAMAGES AND INJUNCTION

**F. Defendants Have Sufficient Resources to Substantially Improve ADA Compliance Within the "Readily Achievable" Standard.**

94. EQUITY controls the preserves operated under the Thousand Trails brand name.

95. EQUITY is a publically traded company on the New York Stock Exchange.

96. EQUITY reported a profit in its Annual Report of over $200 Million in 2018.

97. EQUITY reported in Annual Report that it has over 4,000 employees.

98. Defendants are all under the control of EQUITY, and also have the ability to cause readily achievable remediation measures to be made.

99. It is readily achievable for Defendants to make every itemized correction to the restrooms at Wilderness Lakes RV Resort.

100.     It is readily achievable for Defendants to establish an ADA remediation program in which they set aside and spend an appropriate percentage of annual profits to fund remediation of ADA violations by means of taking readily achievable actions on a continual basis.

101.     It is readily achievable for Defendants to have each Thousand Trails-branded RV park in California inspected by a Certified Access Specialist within the meaning for the California Division of the State Architect's Voluntary Certified Access Specialist Program, and then to schedule appropriate corrective action on a readily achievable timeline so as to control the pace of work and expenditures. *See,* http://www.dgs.ca.gov/dsa/Programs/programCert/casp.aspx; Cal Civil Code §§ 55.52, 1938.

**FIRST CAUSE OF ACTION: VIOLATION OF AMERICANS WITH DISABILITIES ACT**

**BY PLAINTIFFS AGAINST ALL DEFENDANTS**

102.     All prior paragraphs are incorporated by reference as though stated fully here.

103.     Plaintiff has a physical disability within the meaning of the Americans with Disabilities Act.

COMPLAINT FOR DAMAGES AND INJUNCTION

104.    Defendants own, lease, or operate all the preserves operated under the Thousand Trails brand name, including but not limited to the Wilderness Lakes RV Resort.

105.    The Americans with Disabilities Act forbids discrimination in the form imposing architectural barriers in new construction, new alterations, or failing to remove such barriers in existing facilities, where doing so is readily achievable.  *See*, 42 USC §12182(b)(2)(A).

106.    Wilderness Lakes RV Resort is a place of public accommodation within the meaning the Americans with Disabilities Act.

107.    All the preserves operated under the Thousand Trails brand name are places of public accommodation within the meaning of the Americans with Disabilities Act.

108.    Since at least 1992, Defendants, and each of them, has had a legal duty to ensure that all preserves operated under the Thousand Trails brand name, including the Wilderness Lakes RV Resort, were compliant with the Americans with Disabilities Act.

109.    At no time in the past two years has the Wilderness Lakes RV Resort been in compliance with the 1991 ADA Standards or the 2010 ADA Standards.

110.    At no time in the past two years has the collection of Thousand Trails branded RV parks in California been, as a whole, in compliance with the 1991 ADA Standards or the 2010 ADA Standards.

111.    At no time in the past two years has the collection of Thousand Trails branded RV parks in the nation been, as a whole, in compliance with the 1991 ADA Standards or the 2010 ADA Standards.

112.    Plaintiff has the contractual right to visit any preserve operated under Thousand Trails brand within California, has an interest in doing so, and would do so if she knew that such facilities were ADA compliant.

113.    Plaintiff has an interest in visiting preserves operated under Thousand Trails brand throughout the United States, and would do so if she knew that such facilities were ADA compliant.

114.    Plaintiff has been at a preserve operated under Thousand Trails brand for

COMPLAINT FOR DAMAGES AND INJUNCTION

approximately 75% of the days within the past 2 years (and within the past 1 year), in keeping with their status as Member-Residents.

115.     On virtually every day that Plaintiff has been at an RV park operated under the Thousand Trails brand, she has encountered at least one architectural violation of the Americans with Disabilities Act at the preserve.

116.     Plaintiff has been discriminated against and continues to be discriminated against by Defendants in violation of the ADA in that she have been denied full access to Defendants' services and facilities due to architectural barriers.

117.     As a direct and proximate result, Plaintiff has suffered actionable injury for the purposes of seeking injunctive relief under the Americans with Disabilities Act.

118.     An award of attorneys and fees for this cause of action is provided for by statute.

## SECOND CAUSE OF ACTION: VIOLATION OF CALIFORNIA UNRUH ACT BY PLAINTIFF AGAINST ALL DEFENDANTS

119.     All prior paragraphs are incorporated by reference as though stated fully here.

120.     Each and every act of discrimination in violation of the ADA against Plaintiff constitutes a violation of the California Unruh Act at California Civil Code 51.  *See,* Cal. Civil Code §§ 51, 51.5 ["(b) All persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations…in all business establishments of every kind… (f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990…shall also constitute a violation of this section.].

121.     Plaintiff suffered injury and attendant damages for each and every act of discrimination.  This includes but is not limited to deprivation of full and equal access to services and non-economic injury to dignity and well-being.

122.     Each instance of discrimination gives rise to a claim of damages, including for actual damages, nominal damages, and statutory/exemplary damages of up to treble damages but in no event less than $4,000 per occasion of discrimination.  Cal. Civil Code

§ 52.

123.     Plaintiff does not seek so-called "daily damages" as calculated from the date Plaintiff first encountered an ADA violation until the date that the violation was remediated.  Instead, Plaintiff seeks damages for each occasion that she encountered an ADA violation, or was deterred from using Defendants' facilities because of such a violation.  Plaintiff alleges that such occasions occurred multiple times per day, giving rise to a reasonable claim for one occasion per day.

124.     An award of attorneys and fees for this cause of action is provided for by statute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendants, DOES 1 to 10, and each of them, as hereinafter follows:

*As to the first cause of action only (ADA):*

1.     For an appropriate injunction within the discretion of the court designed to require Defendants to bring their operations into compliance with the Americans with Disabilities Act.  Plaintiff respectfully suggests and appropriate injunction could include compelling Defendants: (1) to set an annual budget for an compliance program, the amount of which is set as a percentage of the prior year's annual net income/profit; (2) to establish an enterprise-wide system for receiving and responding to accessibility complaints; (3) providing for a monitoring/compliance period with appropriate funding paid by Defendants for a period of time after any judgment for Plaintiffs in this case.

2.     For attorney fees per statute (including 42 U.S. Code § 12205).

*As to the second cause of action only (Unruh Act):*

3.     For an appropriate injunction within the discretion of the court designed to require Defendants to bring their operations into compliance with the Americans with Disabilities Act.  Plaintiff respectfully suggests and appropriate injunction could

include compelling Defendants: (1) to set an annual budget for an compliance program, the amount of which is set as a percentage of the prior year's annual net income/profit; (2) to establish an enterprise-wide system for receiving and responding to accessibility complaints; (3) providing for a monitoring/compliance period with appropriate funding paid by Defendants for a period of time after any judgment for Plaintiffs in this case. **Further, as to properties within California,** Plaintiff pays for an injunction ordering Defendants to each of their preserves in California inspected by a Certified Access Specialist within the meaning for the California Division of the State Architect's Voluntary Certified Access Specialist Program, which will have the effect of generating a third-party itemization of ADA violations for thoughtful consideration within a remediation program focusing on readily achievable improvements affecting the lives of Member-Residents.  See, http://www.dgs.ca.gov/dsa/Programs/programCert/casp.aspx; Cal Civil Code §§ 55.52, 1938.

4.    For actual damages according to proof.

5.    For nominal damages.

6.    For statutory/exemplary damages according to proof, including per-occasion minimum statutory damages at the rate of no less than $4,000 per day in which Plaintiff stayed at one of Defendants' properties within the period of the relevant statute of limitations, and continuing until the commencement of any trial or judgment in this matter.

7.    For attorney fees per statute (including Cal. Civil Code § 52);

*As to all causes of action*

8.    For costs of suit;

9.    For pre-judgment interest as may be allowed by law;

10.    For such other and further relief as the court deems proper.

COMPLAINT FOR DAMAGES AND INJUNCTION

For the purposes of due process and default judgment Plaintiff set forth a prayer of $2 Million (Two Million), understanding this amount be arrived at for reservation of rights for these purposes and is subject to change, including increase, during litigation of this matter.

Dated: October 14, 2019                        CLAYEO C. ARNOLD, APC


                                       By:    /s/ Joshua H. Watson
                                              Joshua H. Watson
                                              CLAYEO C. ARNOLD, APC

                                              Darren Guez
                                              THE DARREN GUEZ LAW FIRM

                                              *Attorneys for Plaintiff*
                                              *DEBORAH HITE*


## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury.


Dated: October 14, 2019                        CLAYEO C. ARNOLD, APC


                                       By:    /s/ Joshua H. Watson
                                              Joshua H. Watson
                                              CLAYEO C. ARNOLD, APC

                                              Darren Guez
                                              THE DARREN GUEZ LAW FIRM

                                              *Attorneys for Plaintiff*
                                              *DEBORAH HITE*

COMPLAINT FOR DAMAGES AND INJUNCTION